SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

TARA JEWELS LLC,

                Plaintiff,

-against-

JEFFREY SHLAKMAN, TINA MORETTI, MICHAEL LERCHE, GOLDSTAR JEWELLERY LLC, BRAHMA DESIGNS, INC. and MONIQUE LHUILLIER LICENSING, LLC,

                Defendants.

---

INDEX NO. 656141/2018

**FIRST AMENDED COMPLAINT**

---

Plaintiff, Tara Jewels LLC, ("Plaintiff" or "Tara Jewels"), says by way of First Amended Complaint against Defendants, Jeffrey Shlakman ("Shlakman"), Tina Moretti ("Moretti"), Michael Lerche ("Lerche"), Brahma Designs, Inc. ("Brahma"), Goldstar Jewellery LLC ("Goldstar"), and Monique Lhuillier Licensing, LLC ("MLL") (collectively "Defendants"), as follows:

## <u>NATURE OF THE ACTION</u>

1.     This action arises out of Defendants' theft of Plaintiff's trade secrets, confidential and proprietary information, and business opportunities. While Shlakman and Moretti were working for Plaintiff, they converted trade secrets and confidential and proprietary information relating to Plaintiff's jewelry business and used the information and trade secrets in their new roles with Goldstar, for the benefit of Goldstar and to the detriment of Tara Jewels, to steal key brands and customers from Tara Jewels. Defendants worked in a calculated manner to take Plaintiff's business.

215734747v2

Case 1:19-cv-08366-VSB   Document 2-1   Filed 09/10/19   Page 2 of 21

## PARTIES

2.      Plaintiff is a corporation duly organized and existing under the laws of Delaware with its principal place of business located at 21 West 46th Street, 3rd Floor, New York, NY 10036.

3.      Defendant Shlakman is an individual having, upon information and belief, a residence in California that provided services to and on behalf of Plaintiff in New York.

4.      Brahma is a company owned by Shlakman with an address of 100 Corporate Pointe, Culver City, CA 90230, through which he provided services to Tara Jewels.

5.      Defendant Moretti is an individual having, upon information and belief, a residence at 165 Hillcrest Avenue, Summit, New Jersey 07901.

6.      Defendant Lerche is an individual having, upon information and belief, a residence in the State of New York.

7.      Defendant Goldstar is a corporation duly organized and existing under the laws of New York with its principal place of business located at 20 W 37TH Street, 7th Floor New York, NY 10018.

8.      Defendant MLL is a California limited liability company with a principal place of business located at 4533 Pacific Blvd., Los Angeles, California 90058.

## FACTUAL BACKGROUND

9.      Tara Jewels is an importer and wholesaler of diamond and gemstone jewelry with substantial experience selling, designing, and manufacturing goods and merchandise under license from others.

10.     Tara Jewels is a single member LLC that is owned by Tara Jewels Holdings, Inc.

11.     Tara Jewels Holdings, Inc. is a wholly owned subsidiary of Tara Jewels Limited, which is a publically traded company in India.

Case 1:19-cv-08366-VSB Document 2-1 Filed 09/10/19 Page 3 of 21

12. Shlakman worked for Tara Jewels through Brahma from Tara Jewels' incorporation in 2006 until September, 2018, focusing heavily on product development and sales.

13. Shlakman was engaged by Tara Jewels, through Brahma, to serve Tara Jewels as President and was in charge of developing jewelry lines for both the Monique Lhuillier and Zac Posen brands.

14. As part of his work for Tara Jewels, Shlakman was privy to Tara Jewels' designs, samples, and confidential financial and customer files and requirements, including information about specific customer accounts, customer product requirements, costs associated with Tara Jewels' products, pricing information, and Tara Jewels' profit margins.

15. Shlakman had intimate involvement with and knowledge of the design process of both Monique Lhuillier and Zac Posen brands, and worked under Tara Jewels to develop and present the products to customers such as Helzberg's Diamond Shops, Inc. ("Helzberg"). The process to identify and develop Tara Jewels products for particular customers is a process that spanned years and cost millions of dollars to implement and bring to market.

16. Moretti worked for Tara Jewels as a Brand Sales Manager from 2010 until September, 2018.

17. Moretti was the brand manager for the Zac Posen and Monique Lhuillier brands and she had developed relationships with key members of Monique Lhuillier and Zac Posen while working for Tara Jewels. This process spanned years and cost hundreds of thousands of dollars to implement and bring sales to market.

18. Moretti managed and was involved with sales to Blue Nile Inc. ("Blue Nile") and Helzberg. These are the accounts Moretti and Goldstar are converting from Tara Jewels.

Case 1:19-cv-08366-VSB   Document 2-1   Filed 09/10/19   Page 4 of 21

19.     As part of her work for Tara Jewels, Moretti was privy to Tara Jewels' development data, product information, customer requirements, designs, samples, and confidential financial and customer files, including information about specific customer accounts, costs associated with Tara Jewels' products, pricing information, and Tara Jewels' profit margins.

20.     Tara Jewels creates, promotes, and sells designer jewelry with distinctive artistic designs.

21.     From its inception in 2006, Tara Jewels has promoted its products extensively in the United States by means of websites, magazines, flyers, and sales to consumers through substantial marketing contribution to the retailers and brands.

22.     Due to the quality, attractiveness, and uniqueness of its high end jewelry designs, Tara Jewels has realized great financial success in its sales of products over the past twelve (12) years in the United States alone, and established significant relationships with national retailers.

23.     Because Tara Jewels' designs, procedures, innovation, and manufacturing processes are essential to Tara Jewels, it has instituted procedures to maintain the secrecy of all of its confidential, proprietary, and trade secret designs, drawings, and product development files. For example, since its inception, Tara Jewels has used the protection of registered license agreements with royalties payable, registered trademarks, and copyrighted designs.

24.     Accordingly, to prevent its designs, drawings, and product files from being publicly disseminated or used, Tara Jewels uses its own secured server where the files are encrypted and password protected under a secure firewall.

25.     Pricing formulas and merchandising expertise are limited to only a handful of top management in the company.

26. Tara Jewels ensures that departing employees and consultants return all of its confidential and proprietary information and trade secrets.

27. Monique Lhuillier and Zac Posen are jewelry brands specializing in high end jewelry.

28. From May 2, 2014, to the Fall of 2018, Tara Jewels had licensing agreements with Zac Posen to design jewelry bearing the Zac Posen brand, until defendants converted Tara Jewels' data and long term business and products over to Goldstar.

29. Likewise, from February 3, 2012, to the Fall of 2018, Tara Jewels had licensing agreements with MLL to design jewelry bearing the Monique Lhuillier brand.

30. On February 3, 2012, Tara Jewels entered into a license agreement with MLL pursuant to which MLL granted to Tara Jewels the exclusive right to use the trademark MONIQUE LHUILLIER in connection with the design, manufacture and sale of certain goods bearing the trademark MONIQUE LHUILLIER within the United States, Canada, Australia and the European Community through the Distribution Channel.

31. The February 3, 2012 Agreement defined the Distribution Channel as "those retailers approved in advance and in writing by [MLL] . . ., including pre-approved better specialty stores (i.e. Ben Bridge, Long's Jewelers, Fink's Jewelers, Reeds Jewelers, or any specialty store that is an authorized Rolex dealer) and better department stores (i.e. Saks Fifth Avenue, Neiman Marcus, Bergdorf Goodman, Bloomingdales, and Nordstrom)" and went on to provide that the only pre-approved retailer as of the Effective Dates is BlueNile.com.

32. Thereafter, Tara Jewels and MLL amended the February 3, 2012 licensing agreement.

33. On or about March 26, 2012, MLL and Tara Jewels entered into a First Amended to License Agreement, which amended the February 3, 2012 License Agreement.

34. On or about June 4, 2012, MLL and Tara Jewels entered into a Second Amendment to License Agreement amending the February 3, 2012 License Agreement to allow for renewal of the License Agreement, dated February 3, 2012, for additional one (1) year terms upon the parties mutual written agreement.

35. On or about August 16, 2012, MLL and Tara Jewels entered into a Third Amendment to the License Agreement amending the February 3, 2012 License Agreement.

36. On June 5, 2018, Tara Jewels and MLL entered into another license agreement pursuant to which MLL grants to Tara Jewels the exclusive right to use the trademark MONIQUE LHUILLIER in connection with the design, manufacture and sale of fine jewelry within the United States to brick and mortar and e-commerce retail stores operated under the Helzberg Diamonds brand.

37. The June 5, 2018 License Agreement requires a thirty day notice of breach and opportunity to cure, except for certain circumstances not applicable here.

38. The June 5, 2018 License Agreement further provide that "[i]n the event either Ms. Moretti or Mr. Shlakman are no longer involved in a material manner with the Merchandise, [MLL] may terminate this Agreement if no reasonably acceptable replacement is found within a reasonable period of time."

39. As a result of Tara Jewels' ability to use these brands, Tara Jewels was able to enter into separate manufacture and supply agreements with retailers Helzberg and Blue Nile to supply designer jewelry bearing the Monique Lhuillier and Zac Posen brands.

40.     In order for Tara Jewels to start a brand at a retailer, it takes approximately 6 months to one year from the initial market research to the first launch in stores. Thousands of designs are researched and made by dozens of designers. Productions are done by hundreds of skilled craftspeople before the product reaches the retailer. This is an expensive, costly and time consuming process requiring substantial financial resources and expenditures.

41.     Moretti worked intimately with the brands as a brand manager and Blue Nile as she was the salesperson assigned for Tara Jewels to Blue Nile.

42.     Shlakman, in charge of product development, also served as sales lead for Tara Jewels to Helzberg and had exposure to both Zac Posen and Monique Lhuiller brands because of the product development work that he frequently presented.

43.     On or about August 21, 2018, Shlakman provided a letter of resignation ending his relationship with Tara Jewels, providing two weeks' notice.

44.     Similarly, Moretti provided a letter of resignation in July of 2018, providing six weeks' notice to Tara Jewels.

45.     Shlakman represented to Tara Jewels that he was leaving the company, along with a designer in Hong Kong, to open a business of their own. Tara Jewels now knows the statements were clearly a blatant falsehood.

46.     After receiving these resignation letters, Tara Jewels asked Shlakman and Moretti to make a diligent search of their records and to return to Tara Jewels any and all of its intellectual property and propriety or confidential information, including design images, financial information, CAD files, samples, stones, models and waxes, drawings and concepts, customer contacts and passwords, style numbers, trademarks and registrations, and sku numbers.

Case 1:19-cv-08366-VSB   Document 2-1   Filed 09/10/19   Page 8 of 21

47.     Shlakman and Moretti represented to Tara Jewels that they were complying with these requirements and represented that they no longer possessed any of Tara Jewels' intellectual property, confidential information, or trade secrets. Another blatant falsehood by Shlakman and Moretti.

48.     Shlakman and Moretti have admitted that the intellectual property, confidential information and trade secrets belong to Tara Jewels.

49.     Likewise, Shlakman and Moretti both represented to Tara Jewels that they would not share or disclose any of Tara Jewels' proprietary, confidential, or protected information.

50.     Shlakman affirmatively represented to Tara Jewels in an email on August 29, 2018 that he would do everything he could to protect Tara Jewels' interest during his transition from the company as well as after.

51.     Moretti and Shlakman, in connection with the exist process, both verbally assured Tara Jewels that they had not and would not jeopardize Tara Jewels' business or try to take Tara Jewels' brands to Tara Jewels' retailers Helzberg and Blue Nile.

52.     While all these false statements were being made by them to Tara Jewels, Moretti and Shlakman were conspiring and covertly setting up to work with Goldstar and to steal Tara Jewels' accounts with Helzberg and Blue Nile and to pilfer the product and other confidential data of Tara Jewels in order to consummate their heist.

53.     Shlakman and Moretti officially terminated their relationships with Tara Jewels in September, 2018, and both began working for Goldstar.

54.     Contrary to their representations, Shlakman and Moretti kept copies of Tara Jewels' jewelry designs, CAD files, pricing schemes, and samples, which they provided to Michael Lerche, the President of Goldstar, for use in connection with Goldstar's business.

55.     CAD files are "computer aided design" files that contain confidential, proprietary and trade secret information and are used to design, create, modify and produce wax models of jewelry designs. They take hundreds or thousands of hours to create and are used to facilitate the quick reproduction and modification of jewelry designs for reproduction.

56.     Through a public announcement by Goldstar, Tara Jewels shockingly learned that Shlakman had joined Goldstar, contrary to the representations that he was starting his own company for high-end jewelry.

57.     After the departure of Shlakman and Moretti, Tara Jewels' head of production was persuaded to leave the company to join Goldstar, as well as more than 25 highly experienced workers.

58.     Shortly after the departures of Shlakman and Moretti, MLL and Zac Posen took steps to try to end their respective relationships with Tara Jewels.

59.     On or about August 27, 2018, MLL contacted Tara Jewels about the departure of Shlakman and Moretti in order to remind Tara Jewels that "MLL expects [Tara Jewels] to find reasonably acceptable replacements in a reasonable period of time."

60.     Thereafter, Tara Jewels advised MLL of the replacements for Shlakman and Moretti and the plan moving forward in order to seamlessly transition the business relationship between MLL and Tara Jewels.

61.     MLL never objected to the replacements proposed by Tara Jewels or advised Tara Jewels that the replacements were not acceptable.

62.     MLL never provided Tara Jewels with a notice of breach of paragraph 10(c) of the June 5, 2018 License Agreement relating to the departure of Shlakman and Moretti.

63.    On October 31, 2018, MLL contacted Tara Jewels and attempted to terminate the June 5, 2018 License Agreement, which grants to Tara Jewels the exclusive right to use the trademark MONIQUE LHUILLIER in connection with the design, manufacture and sale of fine jewelry within the United States to brick and mortar and e-commerce retail stores operated under the Helzberg Diamonds brand.

64.    MLL never sent another notice terminating or attempting to terminate any other license agreements with Tara Jewels.

65.    Similarly, on November 9, 2018, Zac Posen contacted Tara Jewels attempting to terminate its licensing agreement with Tara Jewels on extremely suspect grounds.

66.    Shlakman and Moretti conspired with Lerche, Goldstar and MLL to cause MLL and Zac Posen to break their licensing agreements with Tara Jewels and to enter into new licensing agreements with Goldstar, which was done simultaneous with the license terminations.

67.    Likewise, Helzberg attempted to terminate its manufacture and supply agreement with Tara Jewels and entered into a new licensing agreement with Goldstar.

68.    Shlakman, Moretti, Lerche, MLL and Goldstar have orchestrated this swift conversion of Tara Jewels' long term business and accounts only because they had all of Tara Jewels' confidential and proprietary data which they misused to improperly and unlawfully obtain this business essentially overnight compared to the years of work it took Tara Jewels to establish such a business and relationships.

69.    On or about November 13, 2018, Tara Jewels discovered that Shlakman and Moretti had provided Lerche and Goldstar with copies of Tara Jewels' confidential information, including proprietary jewelry designs, by email dated November 7, 2018.

70.    Despite Shlakman's and Moretti's representations to Tara Jewels, Shlakman had retained confidential and proprietary information of Tara Jewels.

71.    In the November 7, 2018 email, Shlakman provided Lerche and Moretti with Tara Jewels' confidential and proprietary information that he obtained during the course of his relationship with Tara Jewels by sending, among other information, recaps and CADS for all of the pieces that Tara Jewels launched in the Helzberg Monique Lhuillier collection, together with some new products that were designed by Tara Jewels in August of 2018.

72.    The documents sent by Shlakman to Lerche and Moretti disclose the design, the diamond quality and color, and gold weight of the Tara Jewels' jewelry designs, which allows Tara Jewels' competitor to determine the cost of manufacturing and the profit margin that it needs to be able to compete with Tara Jewels' product. The detailed high quality images allows Goldstar to copy the designs into a master model, that can be then reproduced into a number of pieces.

73.    The information taken and used by Defendants was stored by Tara Jewels on the company server, encrypted by a firewall and password.

74.    The information shared by Shlakman allows Goldstar to copy Tara Jewels' designs very quickly because it does not need to obtain the weight of gold, diamonds and other intricacies of the design process. The CADs can be used to avoid hundreds or thousands of hours of work. Goldstar is also able to then smoothly and quickly transition the sale of brands (Zac Posen and Monique Lhuiller) to retailers (Helzberg and Blue Nile) from Tara Jewels without the normal efforts, processes, delays, costs, and work associated with fair competition in the market place, and between competitors.

75.    The information taken and transferred to Goldstar was developed through a detailed process involving market research and understanding the wants and needs of each brand. The

process is continuous and Tara Jewels evolved with Monique Lhuillier over a five-year development process, costing millions of dollars in resources.

76.     The specific designs and information that Shlakman sent to Lerche and Moretti was developed over a three year period by Tara Jewels and again costing substantial resources to develop.

77.     Shlakman and Moretti have shared more confidential and proprietary information and trade secrets with Goldstar and Lerche, Tara Jewels' discovery only being part of it.

78.     On November 26, 2018, Tara Jewels sent cease and desist letters to Shlakman, Moretti, and Lerche demanding that they return all of Tara Jewels' proprietary and confidential information, provide a full accounting of such information in Defendants' possession and control, disclose any sales or sales attempts of Tara Jewels' products, and provide all sales data related to such sales.

79.     In reply, Moretti flatly and falsely denied using any of Tara Jewels' proprietary designs or products. The letter is a blatant falsehood.

80.     Also in response, Shlakman, through his lawyer submitted an evasive and carefully crafted letter claiming that he, in connection with Goldstar, had not created any models or samples from Tara Jewels' proprietary information. The letter is a blatant falsehood.

81.     Goldstar claimed in its letter that it likewise was not in possession or using any of Tara Jewels' proprietary designs or products, except for certain stud earing drawings that it mistakenly sent to its manufacturer. The letter is another blatant falsehood, joining those of Moretti and Shlakman.

82.     Defendants continue to try and conceal the confidential and proprietary information that Shlakman provided to Lerche and Goldstar.

Case 1:19-cv-08366-VSB    Document 2-1    Filed 09/10/19    Page 13 of 21

83.    Tara Jewels has suffered and will continue to suffer irreparable harm, with the loss of its confidential and proprietary information, that Defendants can continue to use to convert business from Tara Jewels, and destroy and interfere with Tara Jewels' business and customer relations as for which there is no adequate remedy at law.

## AS AND FOR A FIRST CAUSE OF ACTION

### Common Law Misappropriation of Trade Secrets
### Against All Defendants

84.    Tara Jewels repeats and re-alleges the allegations contained in the above paragraphs as if set forth fully herein.

85.    The rights and interests of Tara Jewels in its trade secret jewelry designs, CAD files, design process, financial information, pricing structure, preliminary design drawings, product development files, and customer files constitute trade secrets as defined by the common law of the State of New York.

86.    Defendants have taken Tara Jewels' trade secrets and used them in connection with Goldstar's business.

87.    Specifically, Defendants have misappropriated, among other things, confidential and proprietary information concerning certain rings identified as style nos.: R29469, R29471, R26463, R29446, R29360, R29445, R29447, R29428, R29427, R29616, R29442, R29473, R29434, R29615, R29438, R29619, R29436, R29617, R29215, R29470, R29618, R29450,R29465, R29738, R29462, R30061, R29448, R29429, R30062, R30063, R29437, and R29424.

88.    Tara Jewels owns all of the rights, titles, and interests in and to the confidential and proprietary information that Defendants misappropriated.

89.    Defendants use and continue to use Tara Jewels' trade secrets in the design, development, and sale of Goldstar's jewelry.

90.    Such trade secrets were and are the primary assets of Tara Jewels and have actual and potential independent economic value for Tara Jewels.

91.    Tara Jewels has carefully guarded its trade secret information and has taken reasonable steps to maintain its secrecy.

92.    Shlakman had knowledge that Tara Jewels regarded the trade secret information as trade secrets and of his duty to protect Tara Jewels' interests, including after he left the company.

93.    Upon information and belief, Defendants knowingly, willfully, and maliciously misappropriated and used Tara Jewels trade secrets in order to enhance Goldstar's position with licensors MLL and Zac Posen and retailers Helzberg and Blue Nile.

94.    The use of Tara Jewels' trade secrets allows Defendants to transition or attempt to transition the licenses for Zac Posen and Monique Lhuillier to Goldstar and for Goldstar to make sales to Helzberg and Blue Nile of Zac Posen and Monique Lhuillier designs.

95.    Upon information and belief, Defendants have made or will make substantial profits and gains to which they are not entitled in law or equity.

96.    Tara Jewels has and will suffer irreparable harm, for which there is no adequate remedy at law.

97.    Tara Jewels has and will continue to suffer damages as a result of Defendants' actions.

## AS AND FOR A SECOND CAUSE OF ACTION

**Breach of the Duty of Loyalty Against
Defendants Shlakman and Moretti**

98.     Tara Jewels repeats and re-alleges the allegations contained in the above paragraphs as if set forth fully herein.

99.     Shlakman and Moretti conspired to bring Tara Jewels' intellectual property and other confidential information to Tara Jewels' competitor, Goldstar, and to misappropriate Tara Jewels' valuable licensing contracts while they were still employed at Tara Jewels.

100.    The foregoing conduct of Shlakman and Moretti constitutes a breach of their duty of loyalty to Tara Jewels.

101.    As a result, Tara Jewels has suffered and/or will suffer damages.

### AS AND FOR A THIRD CAUSE OF ACTION

**Breach of Fiduciary Duty Against
Defendants Shlakman and Moretti**

102.    Tara Jewels repeats and re-alleges the allegations contained in the above paragraphs as if set forth fully herein.

103.    A fiduciary relationship existed between Plaintiff and Shlakman and Moretti, which gave rise to a fiduciary duty on the part of Shlakman and Moretti to Tara Jewels.

104.    Shlakman and Moretti had an obligation to act in the best interest of Tara Jewels and to act in good faith in any matter relating to Tara Jewels.

105.    Shlakman and Moretti advanced their own interests to the detriment of Tara Jewels.

106.    Shlakman and Moretti conspired to bring Tara Jewels' trade secrets and other confidential information to Tara Jewels' competitor, Goldstar, and to misappropriate Tara Jewels' valuable licensing contracts while they were still employed at Tara Jewels.

107.    Likewise, upon information and belief, Shlakman and Moretti conspired with Lerche and Goldstar to cause MLL and Zac Posen to terminate their licensing agreements with Tara Jewels and to enter into new licensing agreements with Goldstar.

108.    Shlakman and Moretti improperly used confidential and proprietary information that was stolen from Tara Jewels to pursue opportunities with and for Goldstar.

109.    The foregoing conduct of Shlakman and Moretti constitutes a breach of their fiduciary duties to Tara Jewels.

110.    As a result, Tara Jewels has suffered and/or will suffer damages.

## AS AND FOR A FOURTH CAUSE OF ACTION

**Tortious Interference with Existing and Prospective Business Relationships
Against All Defendants**

111.    Tara Jewels repeats and re-alleges the allegations contained in the above paragraphs as if set forth fully herein.

112.    Upon information and belief, Shlakman and Moretti conspired with Lerche, MLL, Zac Posen, Goldstar to cause MLL and Zac Posen to terminate their licensing agreements with Tara Jewels and to enter into new licensing agreements with Goldstar.

113.    Defendants knew of the license agreements between Tara Jewels and Zac Posen and MLL.

114.    Defendants knew of the agreements between Tara Jewels and Helzberg and Blue Nile.

115.    Defendants were aware of Plaintiff's contractual relationships and prospective business relationships relating to Zac Posen, Helzberg, Blue Nile and MLL.

116.    Defendants used Tara Jewels' trade secrets and confidential information in order to cause Zac Posen, MLL, Helzberg and Blue Nile to break the contracts and business relationships with Tara Jewels and attempt to terminate the license agreements based on improper grounds.

117.    As a direct result of Defendants' interference, MLL and Zac Posen terminated or attempted to terminate their licensing agreements with Tara Jewels and Helzberg and BlueNile terminated their relationships with Tara Jewels.

118.    The foregoing conduct of Defendants constitutes tortious interference with existing and prospective business relationships.

119.    As a result, Tara Jewels has suffered and will continue to suffer damages.

## AS AND FOR A FIFTH CAUSE OF ACTION

### Common Law Unfair Competition
### Against All Defendants

120.    Tara Jewels repeats and re-alleges the allegations contained in the above paragraphs as if set forth fully herein.

121.    Defendants' activities above, including but not limited to Shlakman and Moretti's breaches of their duties of loyalty and fiduciary duties, Defendants' tortious interference with existing and prospective business relationships, and Defendants' misappropriation of trade secrets, constitute unfair competition in violation of the common law of the state of New York.

122.    Defendants conspired with each other in order to wrongfully transition the Monique Lhuillier and Zac Posen licenses to Goldstar and caused Plaintiff significant damages.

123.    As a result, Tara Jewels has suffered and will continue to suffer damages.

## AS AND FOR A SIXTH CAUSE OF ACTION

### Fraud and Misrepresentation
### Against Defendants Shlakman, Brahma, and Moretti

124.    Tara Jewels repeats and re-alleges the allegations contained in the above paragraphs as if set forth fully herein.

Case 1:19-cv-08366-VSB   Document 2-1   Filed 09/10/19   Page 18 of 21

125.     On August 29, 2018, Shlakman, on behalf of himself and Brahma, represented to Tara Jewels that he would do everything he can to protect Tara Jewels' interest during his transition from the company as well as after.

126.     On several occasions in August and September 2018, Shlakman and Moretti represented that they returned all of Tara Jewels' confidential and proprietary information and Shlakman was going to open his own business focusing on high end jewelry.

127.     On September 7, 2018, Moretti represented that she did not have any of Tara Jewels' property.

128.     Shlakman and Moretti's representations were false when made.

129.     Shlakman and Moretti's representations were made with the intent to induce Tara Jewels to rely on it and trust that Shlakman was not conspiring to steal trade secrets, customers, opportunities, or accounts from Tara Jewels.

130.     Tara Jewels relied on Shlakman's representations.

131.     Tara Jewels operated as though its business was not being stolen by Defendants and that it could operate in good faith, in the normal course with its clients, customers, and partners.

132.     As a result, Tara Jewels has suffered and will continue to suffer damages.

## AS AND FOR A SEVENTH CAUSE OF ACTION

### Breach of Contract
### Against Defendant MLL

133.     Tara Jewels repeats and re-alleges the allegations contained in the above paragraphs as if set forth fully herein.

134.     Tara Jewels and MLL entered into various contracts relating to Tara Jewels exclusive right to use the trademark Monique Lhuillier in connection with the design, manufacture

and sale of fine jewelry and certain other goods through various distribution channels, including BlueNile.com and Helzberg Diamonds.

135.    MLL breached the agreements between the parties.

136.    MLL improperly terminated the June 5, 2018 License Agreement.

137.    As a result, Tara Jewels has been damaged.

## AS AND FOR AN EIGHTH CAUSE OF ACTION

### Breach of Duty of Good Faith and Fair Dealing
### Against Defendant MLL

138.    Tara Jewels repeats and re-alleges the allegations contained in the above paragraphs as if set forth fully herein.

139.    MLL had a duty of good faith and fair dealing under its agreements with Tara Jewels.

140.    MLL has breached its duty of good faith and fair dealing to Tara Jewels.

141.    The actions of MLL resulted in harm to Tara Jewels.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully demands judgment in its favor and against Defendants as follows:

(a)    Granting a temporary and preliminary injunction and permanently restraining and enjoining the Defendants, their officers, agents, employees and attorneys, and all those persons or entities in active concert or participation with them, from:

(i)    manufacturing, importing, advertising, marketing, promoting, supplying, distributing, offering for sale or selling any products which are derived from or substantially similar to Plaintiff's jewelry designs or trade secrets;

(ii)    selling any Zac Posen or Monique Lhuillier branded jewelry from the product line of Tara Jewels to Helzberg or Blue Nile; and

(iii)   using any of Tara Jewels' trade secrets, designs, customer information, or other confidential information to sell to former or current customers of Tara Jewels and enter into relationships with Tara Jewels' current or former Licensees;

(b)     Directing that Defendants account to Plaintiff for all gains, profits, and advantages derived from Defendants' wrongful acts;

(c)     Requiring that Defendants return and deliver to Plaintiff all of Plaintiff's proprietary or confidential information and any documents, designs, or products derived from or substantially similar to Plaintiff's proprietary jewelry designs;

(d)     On the First Cause of Action, damages in an amount to be determined at trial, but not less than $10,000,000.00 plus consequential and incidental damages along with attorneys' fees and costs;

(e)     On the Second Cause of Action, damages in an amount to be determined at trial, but not less than $10,000,000.00 plus consequential, punitive and incidental damages along with fees and costs;

(f)     On the Third Cause of Action, damages in an amount to be determined at trial, but not less than $10,000,000.00 plus consequential, punitive and incidental damages along with attorneys' fees and costs;

(g)     On the Fourth Cause of Action, damages in an amount to be determined at trial, but not less than $10,000,000.00 plus consequential, punitive and incidental damages along with attorneys' fees and costs;

Case 1:19-cv-08366-VSB   Document 2-1   Filed 09/10/19   Page 21 of 21

(h)     On the Fifth Cause of Action, damages in an amount to be determined at trial, but not less than $10,000,000.00 plus consequential, punitive and incidental damages along with attorneys' fees and costs;

(i)     On the Sixth Cause of Action, damages in an amount to be determined at trial, but not less than $10,000,000.00 plus consequential, punitive and incidental damages along with attorneys' fees and costs;

(j)     On the Seventh Cause of Action, damages in an amount to be determined at trial, but not less than $10,000,000.00 plus consequential, punitive and incidental damages along with attorneys' fees and costs;

(k)     On the Eighth Cause of Action, damages in an amount to be determined at trial, but not less than $10,000,000.00 plus consequential, punitive and incidental damages along with attorneys' fees and costs; and

(l)     Granting to Plaintiff such other and further relief as the Court deems just and proper, including Plaintiff's costs, disbursements, and reasonable attorneys' fees.

Dated:  New York, New York
         February 11, 2019

PATRICK PAPALIA, ESQUIRE
MICHAEL LAURICELLA, ESQUIRE
ARCHER & GREINER, P.C.
630 Third Avenue, 7th Floor
New York, NY 10017
Telephone:  (212) 682-4940
Fax:  (212) 682-4942
Attorneys for Plaintiff